# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| PINE MOUNTAIN OIL AND GAS , INC., | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. 1:05CV00095 |
| | ) |
| | ) **OPINION AND ORDER** |
| v. | ) |
| | ) By: James P. Jones |
| EQUITABLE PRODUCTION COMPANY, | ) Chief United States District Judge |
| | ) |
| | ) |
| Defendant. | ) |

*Mary Lynn Tate, Tate Law Firm, Abingdon, Virginia, and John S. Edwards, Jr. and Scott W. Cowan, Jones Day, Houston, Texas, for Plaintiff; Howard C. McElroy, Abingdon, Virginia, and Kevin C. Abbott, Natalie Chetlin Moritz, and W. Thomas McGough, Jr., Reed Smith, Pittsburgh, Pennsylvania, for Defendant.*

This case involves a commercial contract dispute arising from the pipeline gathering of natural gas. Before me are two pending motions. In the first, I must determine whether to allow the plaintiff to amend its complaint to add new causes of action, in light of my prior grant of partial summary judgment in favor of the defendant. In the second, in which the defendant has moved for summary judgment on its counterclaim, I must determine whether a dispute arising out of one of the agreements between the parties is subject to arbitration. For the foregoing reasons, I deny both motions, vacate the stay of arbitration of the counterclaim, and direct the

plaintiff to state with particularity the basis of any remaining claim of its current complaint.

I

The plaintiff, Pine Mountain Oil and Gas, Inc. ("Pine Mountain"), owns certain oil and gas interests in southwest Virginia, some of which are located in the so-called Nora Field in Dickinson County, Virginia. The defendant, Equitable Production Company ("Equitable"), owns and operates a gas gathering system, the Berea Gathering System, in the Nora Field. In August 1994, Pine Mountain and Equitable entered into a series of written agreements whereby Equitable, using the Berea Gathering System, was to gather and market certain of Pine Mountain's gas from the Nora Field.

Under the Gas Gathering Agreement (the "GGA"), Equitable agreed to accept and gather "up to" 3,500 dekatherms per day of Pine Mountain's gas.[1] The GGA provided for a specific formula to be used in calculating a gas gathering fee to be

---

[1] A dekatherm is a unit of heating value equivalent to ten therms or one million BTUs. *See* www.aga.org//Content/NavigationMenu/About_ Natural_Gas/Natural_Gas_Glossary /Natural_Gas_Glossary_(A).htm.

Case 1:05-cv-00095-JPJ-PMS   Document 116   Filed 09/01/06   Page 2 of 17   Pageid#: 2871

charged to Pine Mountain by Equitable. It is the gas gathering fee and its application to particular quantities of gas that forms the core of the present dispute.

In June 2005, Equitable imposed higher gas gathering fees, making them retroactive to October 2004. This suit followed, in which plaintiff Pine Mountain alleged breach of contract, seeking declaratory and injunctive relief and a determination of the rights and responsibilities of the parties under the GGA.[2] In particular, Pine Mountain asserted that the GGA, and the gas gathering fees set forth therein, were applicable to all volumes of gas gathered by Equitable, including amounts of gas over 3,500 dekatherms, and that the new, higher fees instituted by Equitable were not permitted by the parties' agreement.

Two weeks after filing suit, Pine Mountain filed a motion for a preliminary injunction, contending that the "other components" added to the gas gathering fee caused Pine Mountain irreparable harm in a number of respects, particularly with regard to Pine Mountain's reporting and disclosure obligations to the SEC and its parent company. Pine Mountain contended that Equitable had failed to uphold its agreement contained in the GGA to allow Pine Mountain reasonable inspection of its business records, and moved for expedited discovery under Federal Rule of Civil

---

[2] Jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332(a) (West 1993 & Supp. 2006).

Case 1:05-cv-00095-JPJ-PMS   Document 116   Filed 09/01/06   Page 3 of 17   Pageid#: 2872

Procedure 34. The whole of Pine Mountain's request of this court centered on its claim that the extra charges imposed by Equitable were in violation of the GGA: "[Equitable]'s unauthorized gathering fee charges under the GGA and [Equitable]'s failure to meet its obligations under . . . the GGA . . . to provide data and other information regarding the unauthorized gathering fee charges has caused and is continuing to cause irreparable harm to Pine Mountain." (Pl.'s Mot. for Prelim. Inj. 16.)

At nearly the same time that Pine Mountain filed suit in this court, it noticed an arbitration concerning a dispute contained in a separate agreement of the parties, the Letter Agreement, executed on the same day as the GGA. The Letter Agreement set forth the terms regarding Equitable's marketing of Pine Mountain's gas, for which Pine Mountain was to receive an indexed minimum price. The dispute regarding the Letter Agreement concerned whether or not the indexed minimum price applied to amounts of gas over 3,500 dekatherms per day. The Letter Agreement contained an arbitration clause, which Equitable invoked in filing a motion to stay the action in this court, pending resolution of the arbitration of the Letter Agreement dispute. In its motion, Equitable argued that the Letter Agreement dispute was "based on the same alleged transactions" and raised "identical legal issues" concerning the fee charged by Equitable to Pine Mountain under the GGA.

- 4 -

In response to Equitable's motion to stay, Pine Mountain filed a motion to stay the arbitration, "pending this Court's resolution of the *threshold* nonarbitrable issue between the parties," which issue Pine Mountain further characterized as "the threshold, essential issue." ((Pl.'s Resp. to Def.'s Mot. to Stay 1, 4) (emphasis added.)) That "essential dispute," according to Pine Mountain, was "[w]hether the GGA applies to volumes in excess of 3,500 dth/day." (*Id*. at 7.)

This court heard the motions for preliminary injunction, expedited inspection, stay of this action, and stay of arbitration on November 7, 2005. During that hearing, Equitable asserted that the GGA and the Letter Agreement should be "read together . . . . as part of an overall transaction between the parties," and that "[t]hey both apply only to the first 3,500 dekatherms." (Tr. 29, 30, Nov. 7, 2005.) Conversely, Pine Mountain argued that the GGA "is a totally stand alone document" (*Id.* at 118), and that Virginia law's adherence to the plain meaning doctrine of contract law prevented this court from considering other documents in construing the GGA, including the Letter Agreement. Pine Mountain asked that the court "consider expedited treatment of . . . the construction of the Gas Gathering Agreement." (*Id.* at 120.)

At the conclusion of the hearing on the pending motions, I denied in a bench opinion Pine Mountain's motions for a preliminary injunction and for expedited

Case 1:05-cv-00095-JPJ-PMS   Document 116   Filed 09/01/06   Page 5 of 17   Pageid#: 2874

discovery on the ground that there was no showing of irreparable harm. I took under advisement Equitable's motion to stay this case pending arbitration of the Letter Agreement. Thereafter, on November 23, 2005, by agreement of the parties, I denied the motion to stay the case and granted Pine Mountain's motion to stay the arbitration pending further order of the court. I also set the case for an expedited trial beginning April 24, 2006.

Shortly thereafter, Equitable submitted a motion for summary judgment, arguing that the plain meaning of the language contained in the GGA limited its application to 3,500 dekatherms per day, and that the Letter Agreement supported the GGA's plain meaning.[3]

In response, Pine Mountain filed its own motion for summary judgment, asserting that "it is unnecessary for this court to refer to anything other than the language within the four corners of the GGA to resolve this dispute." (Pl.'s Resp. to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. 2.) Alternatively, Pine Mountain asked the court to interpret the other contemporaneous agreements between the parties as a means of clarifying the meaning of the GGA. At oral argument on the

---

[3] Consistent with its contention at oral argument, Equitable contended that I should read the Letter Agreement in context with the GGA because the two documents were executed the same day, by the same parties, and relevant in connection with the same purchase and sale of the Berea Gathering System. Thus, Equitable argued, the Letter Agreement could be considered to ascertain the meaning intended by the GGA.

- 6 -

cross-motions for summary judgment, however, in responding to the court's question regarding whether it was "able to decide the proper interpretation based on the four corners of the Gas Gathering Agreement," Pine Mountain's counsel unambiguously answered, "Yes, Your Honor." (Tr. 11, Jan. 27, 2006.)

Because of the expressed need by Pine Mountain for a prompt resolution of the case, I announced a decision from the bench following oral argument on January 27, 2006. Relying on *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984), I held that where parties memorialize their agreement in a clear and explicit writing, the court must look to the plain meaning within the four corners of the document itself for purposes of interpretation. Applying that analysis to the present dispute, I determined that the language of the GGA was not ambiguous and that extrinsic evidence was therefore not required. I found that the plain language of the GGA limited Equitable's obligation to follow the gas gathering fee formula to amounts of gas "up to" 3,500 dekatherms per day. Accordingly, I granted Equitable's motion for summary judgment, and denied Pine Mountain's motion. My written order entered January 28, 2006, declared "that the terms and provisions of Article IV, Gathering Fees, of the Gas Gathering Agreement dated August 26, 1994, do not apply to volumes of gas greater than 3,500 dekatherms per day." (Order, Jan. 28, 2006.)

- 7 -

The parties then jointly moved to vacate the trial date, on the ground that the parties were "in the process of preparing certain filings to advise the Court of their respective positions regarding what further matters they contend are to be resolved in the case." (Joint Mot. ¶ 1, Feb. 2, 2006.) In accord with the motion, the trial date was cancelled.

Equitable then filed a motion for summary judgment on its counterclaim, asserting that my decision regarding the GGA should be extended to the parties' dispute regarding the Letter Agreement, and that the arbitration clause contained therein was applicable only to disputes regarding the first 3,500 dekatherms per day, and was thus inapplicable to the charges allegedly levied on Pine Mountain's gas in excess of 3,500 dekatherms per day.

In response, Pine Mountain moved to amend its complaint and answer to Equitable's counterclaim. In its motion, Pine Mountain asked the court to interpret the other agreements between the parties in order to determine whether they afford Equitable the right to charge a higher gathering fees for amounts of gas above 3,500 dekatherms per day.

Both Equitable's motion for summary judgment on its counterclaim and Pine Mountain's motion to amend were briefed and thereafter orally argued on April 12, 2006. The motions are ripe for decision.

- 8 -

I turn first to Equitable's motion for summary judgment on its counterclaim, which focus is on the Letter Agreement executed between the parties on August 26, 1994. The Letter Agreement sets forth a gathering fee of $0.29 per dekatherm of Pine Mountain's gas gathered by Equitable. Equitable contends that Pine Mountain has failed to bargain in good faith regarding an increased gathering fee, proposed by Equitable in order to share with Pine Mountain the costs expended by Equitable in expanding the gathering system, and construction of new pipelines, compression facilities, and delivery points.

Equitable seeks a declaration that under the Letter Agreement, it is bound to charge $0.29 per dekatherm only for the first 3,500 dekatherms of Pine Mountain's gas gathered by Equitable, and that it is free to charge a more inclusive gathering fee for volumes of gas in excess of 3,500 dekatherms. It also seeks a declaration that the arbitration clause contained in the Letter Agreement is inapplicable to disputes regarding volumes of gas in excess of 3,500 dekatherms. For the following reasons, I decline to grant Equitable the declaratory relief it seeks, and deny its motion for summary judgment.

The question of arbitrability is a matter for the court to decide. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In determining whether

- 9 -

an issue is arbitrable, I am bound to adhere to the liberal federal policy favoring arbitration such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25(1983). In particular, the Supreme Court has held as arbitrable issues related to "the construction of the contract language itself or an allegation of waiver, delay, or a like defense." *Id*. at 25. The Court has further held that a party's request to arbitrate may not be denied unless positive assurances exist indicating that the arbitration clause "is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers Union of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Here, the Letter Agreement states that "[a]ny controversy arising between the parties with respect to any provision not resolved by agreement shall be determined by a board of arbitration . . . ." (Letter Agreement 3-4.) A plain reading of the arbitration clause presents no indication that the parties intended to exclude from arbitration a dispute regarding the volume of gas to which the Letter Agreement applies. Further, the arbitration clause is broadly worded, including "any controversy" based on "any provision," which tends to indicate that the parties contracted to settle by arbitration all disputes relating to or arising from the Letter Agreement. Because Equitable has not made a sufficient showing to overcome the

heavy presumption in favor of arbitration, I find that the Letter Agreement dispute is subject to arbitration, and I will accordingly deny Equitable's motion for summary judgment on its counterclaim.

After Equitable moved for summary judgment, Pine Mountain moved to stay the Letter Agreement arbitration pending resolution of the "essential dispute" regarding the interpretation of the GGA and its application to volumes of gas in excess of 3,500 dekatherms per day. By agreement of the parties, I stayed the arbitration pending further order of the court. In view of my ruling denying Equitable's motion for summary judgment on its counterclaim, it is appropriate to vacate that stay and permit the parties to proceed to arbitration.


III

I next turn to Pine Mountain's motion to amend its complaint and answer. Pine Mountain asserts that, in spite of summary judgment in favor of Equitable, the gas gathering fee dispute is not yet resolved. It contends that I should consider the other agreements into which the parties entered contemporaneously with the GGA and the Letter Agreement, in order to determine Equitable's right to charge the new fees that form the basis of the parties' dispute. Pine Mountain contends that the proposed amendments to its complaint and answer dealing with the other agreements comport

with issues already in the case and directly relate to the dispute about the gathering fees.

Among those other agreements Pine Mountain says I should interpret are a "Coalbed Methane Exploration and Development Agreement," executed April 5, 1988, which requires Equitable, as Pine Mountain's agent, to market as a single stream Pine Mountain's and Equitable's coalbed gas interests, with revenues distributed proportionately subject to Equitable's billing the parties' joint account for costs arising out of that agreement. Similar cost terms were included in a "Coalbed Methane Gas Operating Agreement," executed April 5, 1988, and a "Conventional Gas Operating Agreement," executed August 1, 1994. An agreement entitled "Accounting Letter Agreement," executed August 26, 1994, involves transport charges and pipeline lease payments.

Federal Rule of Civil Procedure 15(a) declares that leave to amend a complaint "shall be freely granted when justice so requires." Accordingly, the Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). It is well-settled that leave to amend a pleading should only be denied where the amendment would be prejudicial to an opposing party, the moving party has exercised bad faith, or where

amendment would be futile. *See Johnson v. Oroweat Foods Co.*, 785 F.2d. 503, 509 (4th Cir. 1985).

I may not deny Pine Mountain's motion for leave to amend based solely on delay. After some time, the delay will become undue, placing an unwarranted burden on the court, or "prejudicial," placing an unfair burden on the opposing party. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *see also Johnson*, 785 F.2d. at 509. If delay is undue or if allowing amendment prejudices the defendant, leave to amend under Rule 15 is impermissible. Here, I find that Pine Mountain's piecemeal approach to the current dispute demonstrates both bad faith in causing undue delay to the court, and impermissible prejudice to the defendant. Accordingly, I find that the motion to amend should be denied.

A bad faith inquiry requires analysis related to the plaintiff's motive for not amending his or her complaint earlier. *Adams*, 739 F.2d at 868. Pine Mountain asserts that its proposed amendments comport with issues already existing in the case. However, I disagree that mere acknowledgment by the parties of the existence of the other agreements puts those agreements "in issue" for purposes of the dispute currently before this court. Instead, a more accurate conclusion is that Pine Mountain made a voluntarily and tactical decision to focus its arguments on the interpretation of the GGA, purposefully leaving aside any reliance on other agreements as a basis

- 13 -

for its claim. During oral argument in this case Pine Mountain's counsel assured the court that the dispute could be decided based solely on an interpretation of the four corners of GGA, and that I need not look to any other agreements in order to make a determination regarding "the essential dispute."

In *Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.*, 974 F.2d 502 (4th Cir. 1992), the Fourth Circuit denied a plaintiff's motion for leave to amend its complaint where the plaintiff sought to add three additional causes of action, to be tried on remand. *Id*. at 506. In denying the plaintiff's motion to amend, the court noted that while Federal Rule of Civil Procedure 15 promotes liberal amendment of pleadings, it "does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time." *Id*. It further held that where a plaintiff asserts its "best" claim before the court, it may not assert additional claims after its initial theory has failed. *Id*.

The theory incorporating all of the parties' agreements as evidence of Pine Mountain's right to be free from the new fees it now disputes was available to it from the outset of this case. In fact, Pine Mountain's motion to amend effectively reasserts the same cause of action upon which I have already granted summary judgment. As the court held in *Omni*, "nothing in the federal rules encourages a plaintiff to delay bringing causes of action until the plaintiff's 'better' claim is resolved." *Id.* Because

- 14 -

I find that Pine Mountain could have asserted the proposed amendments earlier in the case, rendering a more efficient expenditure of judicial resources, I find that its motion to amend is impermissibly accompanied by bad faith.

I turn next to the proposed amendment's prejudicial effect on defendant Equitable. Whether a motion is prejudicial may be determined based on the nature and timing of the amendment. *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). A prejudicial amendment, for example, is one that raises a new theory requiring the gathering and analysis of facts not already considered, and is offered shortly before or during trial. *Foman*, 371 U.S. at 182. Post-judgment motions to amend are subject to the same analysis as those offered before judgment has been rendered, although a finding of prejudice is more likely the closer to trial the amendment is offered. *Id.*; *see also Adams*, 739 F.2d at 864.

In its complaint, Pine Mountain asserted as its primary cause of action that the GGA's fee provisions apply equally to all volumes of gas delivered by Equitable. (Complaint 6-7.) In response, Equitable filed a motion for summary judgment on the issue, arguing that the fee schedule contained in the GGA applied only the first 3,500 dekatherms of gas. After timely briefs and oral argument, I ruled in favor of Equitable, holding that the four corners of the GGA gave rise to a conclusion that the fees set out therein applied only to the first 3,500 dekatherms of gas gathered by

- 15 -

Equitable. With its motion to amend, Pine Mountain seeks to impermissibly offer an alternative theory of recovery for the same cause of action, based on extrinsic agreements that have not, to this point, served as the basis for any request for relief.[4] In failing to introduce the matters contained in the proposed amendments, Pine Mountain has acted contrary to the spirit of Rule 15's liberal amendment policy, and thereby prejudiced Equitable by not apprising it at the outset of its true position in the action. *See* 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1488 (2d ed. 1990). Because Pine Mountain's motion to amend its complaint and answer is unduly delayed and prejudicial to defendant Equitable, it will be denied.

IV

Still remaining in the case is a possible claim by Pine Mountain that Equitable has violated the GGA by charging higher than-agreed-to fees with regard to the <u>first</u> 3,500 dekatherms of gas gathered by Equitable on behalf of Pine Mountain. Pine Mountain has never stated this claim with sufficient particularity. If Pine Mountain

---

[4] Pine Mountain asserts that Equitable's counterclaim places the other agreements in issue. However, Equitable's counterclaim asserts only a cause of action based on the Letter Agreement, and no other agreements.

intends to maintain such a claim, I will direct that it should state that claim with particularity within thirty days.

V

For the foregoing reasons, it is **ORDERED** as follows:

1.   The defendant's motion for summary judgment on its counterclaim is DENIED;

2.   The plaintiff's motion to amend its complaint and answer is DENIED;

3.   The stay of arbitration of the Letter Agreement entered by order of this court on November 23, 2005, is VACATED; and

4.   If the plaintiff claims that the defendant has violated the GGA by charging higher-than-agreed-to fees with regard to the <u>first</u> 3,500 dekatherms of gas, it must assert with particularity such claim within 15 days or the court will dismiss any such claim without prejudice and enter final judgment in this case.

ENTER: September 1, 2006

/s/ JAMES P. JONES
Chief United States District Judge

- 17 -